Dear Mr. Saquella:
You have requested our opinion whether retailers may continue to collect a "bad check fee" despite the repeal, in Chapter 91 of the Laws of Maryland 1996 (effective January 1, 1997), of statutory provisions authorizing these fees. Specifically, you ask whether these fees may be imposed as a matter of contract law without specific legislative authorization.
We need not address your question about potential other legal bases for the imposition of bad check fees.[1] In our opinion, the 1996 legislation did not repeal the specific legislative authorization for these fees. The language in the 1996 legislation that apparently repealed this authorization was a drafting mistake that should not be given effect.[2] We do recommend, however, that the mistake be formally corrected by legislation in the next session.
 I Drafting Mistakes and Actual Legislative Decisions
A. Introduction
In Kaczorowski v. City of Baltimore, 309 Md. 505, 520,525 A.2d 628 (1987), the Court of Appeals endorsed the principle of statutory construction that refuses to "permit a patent drafting error to frustrate [the legislative] goal. . . ." Instead, "[w]hen we pursue the context of statutory language, we are not limited to the words of the statute as they are printed in the Annotated Code. We may and often must consider other external manifestations or persuasive evidence, including a bill's . . . relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal. . . ."309 Md. at 514-15. In Kaczorowski, the Court refused to give effect to statutory language that, as a result of a drafting mistake, had repealed a bond issuing authority in Baltimore City.
The situation here is as close to that in Kaczorowski as one is likely ever to see. In 1986, the General Assembly, to further the goal of deterring the use of bad checks, enacted a law authorizing merchants to impose a fee for bad checks. Twice thereafter, the General Assembly refined the 1986 law. Yet in 1996, a drafting mistake in one line of an unrelated bill apparently repealed that law. To give effect to the repeal would be to engage in "unreasoning and unreasonable literalism in statutory interpretation." Kaczorowski, 305 Md. at 517 n. 5.
In our opinion, the 1986 law (as subsequently amended) remains legally effective. That is, §§ 3-512 through 3-514 of the Commercial Law ("CL") Article, Maryland Code, as they existed prior to the effective date of Chapter 91 of the Laws of Maryland 1996, may continue to be given effect.
B. History of "Bad Check" Legislation
The seeds of the current problem were sown in 1986, when the General Assembly enacted Chapter 475 of the Laws of Maryland 1986, "for the purpose of permitting the holder of a dishonored check or other instrument to recover a certain fee. . . ."[3] This legislation, imposing liability for "a collection fee of $25" on the person who wrote the bad check and requiring a specified "notice of dishonored check," was unfortunately codified in CL Title 3, the title of the Commercial Law Article that is Maryland's version of Article 3 of the Uniform Commercial Code, governing negotiable instruments. Specifically, the liability provision was codified at CL, § 3-512; the notice provision, at CL, § 3-513; and a description of the provision's scope, at CL, § 3-514.
This codification was superficially logical, because the bad check fee was a regulation of a negotiable instrument. The 1986 law, however, was not part of the UCC. The addition of these non-UCC provisions to CL Title 3 was a departure from the overall design of this portion of the Code and was inconsistent with the UCC's purpose "[t]o make uniform the law among the various jurisdictions." CL, § 1-102(2)(c).
In Chapter 534 of the Laws of Maryland 1987, the General Assembly amended CL, § 3-512 through 3-514, most notably by imposing liability not only for the collection fee of $25 but also for "an amount up to 2 times the amount of the check, but not more than $1,000." The bill identified the circumstances under which these additional damages were not recoverable and made corresponding changes in the required notice.
The last significant change in the bad check law was made by Chapter 351 of the Laws of Maryland 1991. This bill clarified that the $25 collection fee was a cap; a merchant could charge a lower fee if collection costs were actually lower. The 1991 law also addressed the effect of a "justifiable stop payment order. . . ."
Nothing in the 1991 law or any other legislation reflects a legislative decision to retreat from the General Assembly's 1986 policy judgment: that a collection fee would help "to reduce merchants' losses due to bad checks which are then passed along to the consumers of the State." Report of the Senate Judicial Proceedings Committee on House Bill 607 of 1986.
C. The 1996 Maryland UCC Revision
In Chapter 91 (Senate Bill 40) of the Laws of Maryland 1996, the General Assembly adopted a revision of Title 3 of the Maryland UCC, governing negotiable instruments, that was proposed by the Commission on Uniform State Laws.[4] In 1991, the National Conference of Commissioners on Uniform State Laws had issued the text of an extensively revised Article 3 of the UCC. In general, the revised article sought to bring the law governing negotiable instruments in line with modern banking practices. Senate Bill 40 simply sought to achieve in Maryland the national uniformity that is the fundamental objective of the UCC. The staff of the Senate Finance Committee summarized the bill's purpose as follows:
 The bill adopts for Maryland the revision that the Commission on Uniform State Laws (made up of legislators, judges, and lawyers from all 50 states) has made to Titles 3 and 4 of the Uniform Commercial Code. . . . The UCC was developed in 1951 and is in place in all 50 states. The revisions are made to: (1) adapt to changes in the marketplace and evolving technologies (such as check truncation, in which a bank transmits electronic information rather than the paper check itself); (2) clarify certain ambiguities in the law; (3) increase the negotiability of instruments; and (4) increase uniformity among states' commercial law (and therefore minimize burdens on interstate transactions).
The National Conference and State Commission never addressed, or recommended repeal of, non-UCC provisions. They were not concerned with non-UCC provisions that happened to be codified in CL Title 3. Nothing in the staff summary or anything else in the bill file mentions the Maryland law on bad check fees.
Because the changes to the law of negotiable instruments were so extensive, the National Conference proposed an entirely new UCC Article 3. The old UCC Article 3 was intended to be repealed. In Maryland, UCC Article 3 is CL Title 3. Therefore, the drafters of Senate Bill 40 understandably assumed that, following the national model, the old CL Title 3 was to be repealed in favor of the revised CL Title 3. This drafting decision was reflected in the bill's repealer clause, which repealed CL Title 3 in its entirety. The repealer clause thus embraced the bad check fee law, CL, § 3-512 through 3-514.
At the time, no one noticed the overinclusive repeal language. The only witnesses at the Senate Finance Committee hearing on the bill were representatives of the Maryland Bankers Association, whose interest lay elsewhere. The House and the Senate both passed Senate Bill 40 unanimously. It is inconceivable that this vote would have occurred had anyone noticed that the bill destroyed the system for deterring bad checks that, within the previous decade, the General Assembly passed and then refined twice.
 II Conclusion
In our opinion, CL, § 3-512 through 3-514 remain the law of Maryland, notwithstanding the drafting mistake that led to their seeming repeal by Chapter 91 of the Laws of Maryland 1996.[5]
We urge the General Assembly to amend Chapter 91 to correct the error. Moreover, we suggest that these provisions be codified elsewhere in the Commercial Law Article than in CL Title 3 or any other title devoted to the UCC.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Jack Schwartz Chief Counsel Opinions and Advice
[1] See note 3 below.
[2] As a general rule, the Attorney General's office does not provide opinions to private citizens. In this instance, the Attorney General has authorized an exception to this general rule, in light of the importance and scope of the problem and the highly unusual circumstance in which a provision in enacted legislation is not to be given effect.
[3] The legislative history of Chapter 475 supports the view that this statutory fee was intended as a supplement to any remedies that the holder might have under the law of commercial contracts. Should a retailer wish to establish a contractual (as distinct from a statutory) basis for the charging of a bad check fee, considering the possibility that a court might disagree with the conclusion in this opinion, the retailer should consult its own counsel about the appropriate course of action.
[4] The Commission's mission includes "recommend[ing] the best action to accomplish uniformity in legislation" and "seek[ing] the best means to obtain uniformity. . . ." § 9-206(a) of the State Government Article.
[5] For the convenience of readers of this opinion, these provisions are appended in full.
 *Page 171